**E-Filed 4/27/2007**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DAVANZIA, S.L., | Case Number C 07-0247 JF (HRL) |
| Plaintiff, | ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND |
| v. | [re: docket no. 18] |
| LASERSCOPE, INC., et al., | |
| Defendants. | |

## I. BACKGROUND

On January 12, 2007, plaintiff Davanzia, S.L. ("Davanzia") filed the initial complaint in this action. On January 23, 2007, Davanzia filed a first amended complaint ("FAC") that asserts three claims against defendants Laserscope, Inc. ("Laserscope") and American Medical Services, Inc. ("AMS"): (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) breach of express warranty.

Davanzia alleges the following in the FAC: Laserscope manufactures and supplies medical laser systems and their related energy delivery devices, *i.e.* fibers for urological surgery. FAC ¶ 7. The retail price in Spain for one such system, the GreenLight PV laser system, is

---

[1] This disposition is not designated for publication and may not be cited.

approximately $175,000.  *Id.*  In or about 2002, Laserscope began searching for a distributor to bring its laser systems and related fibers to the Spanish market.  FAC ¶ 8.  Laserscope consulted with Jorge Garcia Martinez, now the President of Davanzia, about an exclusive distributorship.  *Id.*  These discussions led to the execution of a Memorandum of Understanding and the creation of Davanzia by Jorge Garcia Martinez and several other investors for the express purpose of distributing Laserscope's GreenLight PV system and related fibers in the Spanish market.  *Id.*  On or about November 21, 2002, Davanzia and Laserscope entered into the Authorized International Distributor Agreement ("the Agreement").[2]  The Agreement provides that its initial term would end two years after the date of the purchase of the first demonstration/clinical unit.  Agreement § VII.A.  That unit was purchased on or about January 13, 2003.  FAC ¶ 11.

Davanzia enjoyed great success bringing Laserscope products to the Spanish market, FAC ¶ 16, and the Agreement automatically renewed after the expiration of the initial two-year term.  FAC ¶ 17.  On or about May 18, 2006, Laserscope announced the upcoming launch of a new version of the GreenLight PV system called the GreenLight HPS laser system.  FAC ¶ 18.  Davanzia ordered a total of twelve GreenLight HPS laser systems prior to August 25, 2006.  *Id.*  On or about June 5, 2006, AMS acquired Laserscope and made it an indirect wholly-owned subsidiary.  FAC ¶ 19.  On or about September 11, 2006, Laserscope delivered a letter to Davanzia purporting to terminate the Agreement effective November 21, 2006.  FAC ¶ 21.  On or about November 3, 2006, Laserscope contacted Davanzia in writing, acknowledging a miscalculation of the termination date and stating a new termination date of January 13, 2007, the four-year anniversary of the purchase of the demonstration/clinical unit.  FAC ¶¶ 11, 26.  As of the filing of the FAC, five GreenLight HPS laser systems remain undelivered and owing.  FAC ¶ 27.  Davanzia seeks damages in an amount not less than $25,459,215.39 for delays in the delivery of the GreenLight HPS laser systems, failure to repair or to replace faulty equipment, and termination of the agreement.  FAC ¶¶ 37, 40, 44.

On March 12, 2007, Laserscope and AMS filed a motion to dismiss.  Laserscope moves

---

[2]  The Agreement is included as Exhibit 1 to the FAC.

1  to dismiss the claims for damages to the extent that they are based upon the termination of the

2  Agreement.  AMS moves to dismiss each claim against it on the basis that it is not a party to the

3  Agreement.  Davanzia opposes each aspect of the motion.  The Court heard oral argument on

4  April 27, 2007.  For the reasons discussed below, the Court will grant the motion with leave to

5  amend.

6  ## II.  LEGAL STANDARD

7  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

8  Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*

9  *McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the

10  complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*,

11  66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

12  ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

13  ## III.  DISCUSSION

14  1.      Claims for Damages Based Upon the Termination of the Agreement

15  The parties dispute whether Laserscope's termination of the agreement constitutes a

16  unilateral termination at will that would give rise to the payment of damages to Davanzia.  The

17  relevant provisions of the Agreement are as follows:

18  VII.  Term and Termination
   A.  Term.  **This Agreement will commence upon the Effective Date and will**
19  **expire two (2) years after** *the date of purchase of the demonstration/clinical*
   *unit referred to in clause VI above*, **unless renewed or terminated as provided**
20  **herein.**
   B.  Renewal/Extension.  *Once the initial term will elapse, this Agreement shall*
21  *be automatically extended for subsequent terms of the same duration, unless*
   *either party notifies in writing to the other with not less than two (2) months*
22  *notice, of its decision to terminate this Agreement upon expiry of its initial*
   *period or any extension thereof.*
23  . . . .
   G.  Termination for Convenience.  **Either Party may terminate this Agreement,**
24  **at will, at any time, with or without cause, by written notice to the other not**
   **less than sixty (60) days prior to the effective date of such notice.**
25  . . . .
   K.  Effect of Termination.  **The provisions of this Agreement expressly**
26  **concerning obligations of payment, confidentiality, indemnification, and**
   **provisions concerning Product warranties and limitations of liability, shall**
27  **survive any expiration or termination of this Agreement for any reason**.  *In*
   *the event of unfair termination, or termination at will by unilateral decision of*
28  *either party, the other party shall be entitled to claim for damages caused by any*

3

1
2
3
4

*such termination, which, for the Distributor will include its loss, among others, of present or prospective sales, investments, compensation or goodwill.  In particular, Distributor's goodwill shall be assessed as the sum equal to its annual, average, gross sales margin (i.e. gross re-sale price of Products to its customers less gross purchase price from Laserscope) during the last five years, or for as long as this Agreement has been in force if less than five years.*

5    Agreement § VII (emphases in original).

6         Under California law, "the interpretation of a written contract is a matter of law for the

7    court even though questions of fact are involved."  *Southland Corp. v. Emerald Oil Co.*, 789 F.2d

8    1441, 1443 (9th Cir. 1986) (citations omitted).  "In construing a contract, the primary object is to

9    ascertain and give effect to the intention of the parties.  That intention must, in the first instance,

10   be derived from the language of the contract."  *Hensler v. City of Los Angeles*, 124 Cal. App. 2d

11   71, 77 (Cal. Ct. App. 1954) (internal citations omitted).  The interpretation of a contract "must be

12   reasonable," *id.* (citing Cal. Civ. Code § 3542), and "[c]ourts should avoid an interpretation

13   which will make a contract unusual, extraordinary, harsh, unjust or inequitable."  *Id.* (citations

14   omitted) (quotation marks omitted).  "Preference must be given to reasonable interpretations as

15   opposed to those that are unreasonable, or that would make the contract illusory."  *Id.* (citations

16   omitted).

17        Davanzia contends that a termination on expiry (Section VII.B) should be treated as

18   equivalent to a termination by will (Section VII.G) for the purposes of the damages clause.  In

19   light of the record presently before the Court, this interpretation is not reasonable.  By its express

20   terms, the Agreement renews automatically unless a party has given two month's notice of its

21   intent to let the Agreement expire at the end of the two-year term.  If, as Laserscope did in this

22   case, the party gives such notice, the Agreement terminates "upon expiry."  Agreement § VII.B.

23   Section VII.G pertains to terminations during a term, not upon expiration of a term as provided

24   by Section VII.B.  A contrary reading of Section VII.G would render Section VII.B redundant.[3]

25

26        [3]  Davanzia argues that "no one disputes that Section VII.K provides for damages in the
27   event of a Section VII.G termination for convenience.  This demonstrates that the Parties did not
     require Section VII.B and Section VII.G to have language identical to the language in Section
28   VII.K in order for Section VII.K damages to apply."  Opposition 12.  This argument overlooks

4

1 Accordingly, the Court concludes that termination upon expiration of a term, as provided for

2 under Section VII.B, is not a termination at will that triggers damages under Section VII.K.[4]

3 Because Laserscope provided the notice required by Section VII.B and terminated the agreement

4 "upon expiry," the motion to dismiss will be granted as to the claims for damages based upon the

5 termination of the agreement.

6      Davanzia's counsel represented at oral argument that further facts could be pled with

7 respect to the drafting history that would provide support for Davanzia's interpretation of the

8 contract.  Accordingly, leave to amend will be granted.

9 2.     Claims Asserted Against AMS

10      Liability may be imposed upon a parent company if the parent controls the subsidiary to

11 such a degree as to render the latter the mere instrumentality of the former. *Institute of*

12 *Veterinary Pathology, Inc. v. California Health Lab, Inc.*, 116 Cal. App. 3d 111, 119 (1981).  In

13 opposition to the motion to dismiss, Davanzia makes a number of factual allegations that pertain

14 to the degree of control that AMS exercised over Laserscope at the time that Laserscope

15 terminated the Agreement.  However, these allegations are not included in the FAC.

16 Accordingly, the motion to dismiss the claims against AMS will be granted.  Because it is not

17 clear that Davanzia cannot allege facts sufficient to impose liability upon AMS, leave to amend

18 is appropriate.

---

the fact that Sections VII.G and VII.K include the phrase "at will," but that Section VII.B does not.

[4]  The Court has considered the extrinsic evidence that Davanzia offers to show the intent of the parties in drafting Section VII.B.  The asserted fact that the original draft of the Agreement did not include an automatic renewal provision does not render reasonable Davanzia's interpretation of termination upon expiry as equivalent to termination at will.  The parties may have decided that it would be easier if the Agreement renewed automatically under certain circumstances, but the Agreement also reflects the parties's intent to allow a party to terminate the Agreement "upon expiry" if it gives appropriate notice.  As discussed above, that method of termination is separate and distinct from termination for convenience.

Case No. C 07-0247 JF (HRL)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is GRANTED with leave to amend.  Any amended complaint shall be filed within thirty days of the issuance of this order.


DATED:   April 27, 2007

_____
JEREMY FOGEL
United States District Judge

Case No. C 07-0247 JF (HRL)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

1   This Order has been served upon the following persons:

2   Margaret Anne Crawford            maggie.crawford@dlapiper.com,
                                      larry.landry@dlapiper.com
3
4   William J. Frimel                 bill.frimel@dlapiper.com, carmen.manzano@dlapiper.com

    Dianne L. Sweeney                 dianne@pillsburylaw.com, meri@pillsburylaw.com;
5                                     louis.santaana@pillsburylaw.com;
                                      janice.hall@pillsburylaw.com;
6                                     al.guzman@pillsburylaw.com

7   Notice will be delivered by other means to:

8   Gary Hansen
    Oppenheimer Wolff & Donnelly LLP
9   45 South Seventh Street
    Suite 3300
10  Minneapolis, MN 55402

11  Heather N. Hoecke
    Oppenheimer Wolff & Donnelly LLP
12  45 South Seventh Street
    Suite 3300
13  Minneapolis, MN 55402

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. C 07-0247 JF (HRL)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)