* E-filed 2/22/08 *

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVANZIA, S.L., a Spanish corporation,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>LASERSCOPE, INC., a California corporation,<br>and AMERICAN MEDICAL SYSTEMS, INC.,<br>a Minnesota corporation,<br>　　　　　Defendants.<br>_____/<br>LASERSCOPE, INC., a California corporation,<br>and AMERICAN MEDICAL SYSTEMS, INC.,<br>a Minnesota corporation,<br>　　　　　Cross-Complainants,<br><br>　　v.<br><br>DAVANZIA, S.L., a Spanish corporation,<br>　　　　　Cross-Defendant.<br>_____/ | Case No. CV 07-00247 JF (HRL)<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL**<br><br>Re: Docket No. 88 |

　　　Laserscope manufactures and supplies medical laser systems, such as the GreenLight HPS laser systems unit ("HPS unit") for urological surgery. Davanzia, S.L. ("Davanzia") was the Spanish distributor of Laserscope products. When their business relationship soured, Davanzia sued and Laserscope cross claimed. Davanzia had also named Laserscope's parent corporation, American Medical Services, Inc. ("AMS"), based on an alter ego theory, but the trial judge dismissed AMS (without prejudice).

　　　Davanzia now moves to compel document discovery sought in certain Requests for Production (RFP's). This court will grant the motion in part.

**LEGAL STANDARD**

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The party resisting relevant, non-privileged discovery has the burden of showing why discovery should not go forward. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**DISCUSSION**

**A.     Documents Related to AMS**

    1.     Documents in Custody or Control of AMS

Davanzia wants an order holding that responsive documents in the possession of Laserscope's parent, AMS, are within Laserscope's "possession, custody or control," and, therefore, must be produced. Davanzia has theorized that certain gaps in the production are documents that Laserscope gave to AMS and now refuses to produce under the guise that they are no longer in its possession. (Plaintiff has not substantiated this theory.)

Even assuming this theory to be true, the only way that this information could be compelled is if Laserscope, as a wholly-owned subsidiary of AMS, is shown to have "constructive control" over documents in the possession of its parent corporation. *See* Fed. Proc., L. Ed. §26:628. Davanzia has not made a sufficient showing that this subsidiary and parent are operating as one entity (particularly since the alter ego claims have been dismissed).

Furthermore, even though Laserscope has argued that it is not required to produce these documents, it has explained to Davanzia that Laserscope has produced *all* responsive and otherwise producible documents without regard to whether they are technically in the control of AMS or of Laserscope. Trampe Decl. Ex. A (emphasis in original). The motion to compel, as to this point, is DENIED.

    2.     Documents Laserscope produced to AMS (RFP No. 62)

Relying on essentially the same argument, Davanzia seeks an order compelling Laserscope to produce those documents which Laserscope either produced to or gave access to AMS. In response to this request, Laserscope's counsel confirmed in a letter that it did not

"provide any documents to AMS relating to Davanzia other than what Laserscope has already produced." Trampe Dec., Ex. D. Yet, Davanzia remained concerned that all relevant documents were not produced. It sought access to the electronic index of those documents produced to AMS through due diligence.

Plaintiff has made no showing as to why it would be entitled to such a production. However, given Davanzia's lingering concerns, Plaintiff is entitled to a verified response. This part of the motion is DENIED, but a verified response will be required as described below.

**B.     Documents Related to Alleged Defects**

Davanzia says it received seven defective HPS units from Laserscope. Thus, it moves to compel documents related to third parties' complaints of unit defects because it thinks the fact of similar defects will support its claims for breach of contract and breach of express warranty.

<u>1.     RFP's related to communications with the FDA (No.'s 32 and 33)</u>

This aspect of the motion has been resolved and is DENIED AS MOOT.

<u>2.     RFP's concerning defective HPS units provided to entities other than Davanzia (No.'s 18-23, 30-31, and 34-35)</u>

Davanzia seeks all information and communications (both external and internal) relating to any "claimed or actual failure, deficiency or defect" or any "claimed or actual operational difficulties" with any HPS unit. (RFP No.'s 18-23, 30-31). This includes communications (to or from Laserscope) relating to requests to repair or replace HPS units. (RFP No.'s 34-35). Plaintiff agreed at the hearing that the request could be narrowed to the production of documents related to only those defects found in the seven HPS units provided to Davanzia.

In response to the original request, Laserscope produced a service log spreadsheet identifying HPS service requests within the United States from the beginning of the product launch through February 2007 (the distribution agreement ended on January 13, 2007). Defendant explains that it only has access to U.S. records because the company was "spun off" into a different company in the United Kingdom. That new company now has control of

documents related to European sales. Counsel for Laserscope was not entirely certain if it could get access to documents in the possession of that new company, but volunteered to try.

Because the requested information is relevant to Plaintiff's claims or defenses and because the spreadsheet produced is inadequate, this aspect of the motion is GRANTED IN PART. Limited to only those defects found in the seven HPS units provided to Davanzia, Defendant shall respond as set forth below.

**C.     Documents Related to Production and Delivery**

Davanzia thinks that Laserscope intentionally delayed delivery of the HPS units in order to harm Davanzia. Plaintiff says that evidence of this would support its claims that Laserscope breached the requirements of good faith and fair dealing. Therefore, it requested documents relating to any orders for HPS units and deliveries made to entities other than Davanzia. (RFP No.'s 15-17).

In response, Laserscope produced production schedules which showed the dates when orders were placed for HPS units and when the units were manufactured. The schedules do not give dates when the products were ultimately delivered or the reasons behind the allocation decisions. This latter information is what Plaintiff wants.

Laserscope's counsel explained that demand for HPS units was greater than expected and exceeded its manufacturing capacity. No customer received a promised delivery date. And, rather than fill the orders in the order they were received, Laserscope allocated them based on the relative importance of the end-user who wanted the unit. These allocation decisions were made on an ad hoc basis by either Mostyn West (in the U.S.) or Robert Mann (in the U.K.). Counsel stated that all of Laserscope's information pertaining to unit allocation is contained in their emails.

Because such information is relevant, the motion on this aspect is GRANTED IN PART. As explained in the Order below, Defendant shall produce relevant email communications.

### D. Documents Related to Exclusivity Claims

Davanzia wants information pertaining to the sale, marketing and distribution of HPS units in Spain by persons or entities other than Davanzia. (RFP No.'s 63 and 64). Plaintiff did not limit the timeframe for this request and specifically sought documents from Laserscope's replacement Spanish distributer, AMS Iberica. It contends that such information would support its claim that Laserscope breached the exclusivity provision of the agreement.

Counsel for Laserscope confirmed in a letter that "prior to January 13, 2007, Laserscope did not sell any units to any Spanish end-users other than Davanzia." Trampe Dec., Ex. B. On grounds of irrelevance, it refused to produce any documents concerning sales in Spain following the termination of the parties' distribution agreement.

Davanzia counters that post-January 2007 documents are relevant because it claims that Laserscope secretly communicated with Spanish customers prior to the termination of the agreement and then "scooped the sales" that Davanzia had worked to obtain. At the hearing, counsel for Plaintiff identified 13 specific customers for which it claims that Laserscope interfered with its ability to make a sale prior to termination. Defendant agreed to produce the information related to the sales to those 13 customers.

This part of the motion is GRANTED IN PART. Laserscope must properly verify its response pertaining to the pre-January 2007 sales and produce the agreed upon information related to the post-January 2007 sales.

### E. Miscellaneous Documents

Davanzia sought to compel production of the following documents: (1) Document No. AMS002791; (2) Production Schedule for January 2007; and (3) Attachment to Document No. AMS002781. After the motion was filed, these documents were produced. This aspect of the motion is DENIED AS MOOT.

**ORDER**

**By February 27, 2008**, Plaintiff shall provide Defendant with a list of:

- the alleged specific defects for the seven HPS units provided to Davanzia, and
- the 13 customers with which Laserscope allegedly interfered, concerning Davanzia's sale of HPS units.

**By March 7, 2008**, Defendant shall serve on Plaintiff:

- Declarations from an authorized corporate officer and Laserscope's counsel verifying:
  - its response to the request for documents that Laserscope produced to AMS (RFP No. 62); and
  - its response pertaining to pre-January 2007 sales in Spain. (RFP No.'s 63 and 64).
- All information within Laserscope's possession, custody, or control related to the defects identified by Davanzia. (RFP No.'s 18-23, 30-31, and 34-35).
- All information in the possession of the U.K. "spin off" company related to the defects identified by Davanzia. Alternatively, if Laserscope is unable to get such information, it should file and serve a declaration stating it does not have possession, custody, or control of the information and explaining its effort to obtain it from the new company. (RFP No.'s 18-23, 30-31, and 34-35).
- All email communications of either Mostyn West or Robert Mann which relate to the allocation of HPS units. (RFP No.'s 15-17).
- All information relating to the post-January 2007 sales of HPS units to the 13 customers identified by Davanzia. (RFP No.'s 63 and 64).

**IT IS SO ORDERED.**

Dated: 2/22/08

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

Margaret Anne Crawford maggie.crawford@dlapiper.com, larry.landry@dlapiper.com

Rajiv Sajjan Dharnidharka rajiv.dharnidharka@dlapiper.com, christina.wikner@dlapiper.com

William J. Frimel bill.frimel@dlapiper.com, carmen.manzano@dlapiper.com

Dianne L. Sweeney dianne@pillsburylaw.com, al.guzman@pillsburylaw.com, janice.hall@pillsburylaw.com, louis.santaana@pillsburylaw.com, meri@pillsburylaw.com

\* Counsel are responsible for providing copies of this order to co-counsel.

Dated: 2/22/08

/s/ KRO
Chambers of Magistrate Judge Lloyd

7